FILED

2015 Jul-31  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MARQUITA ANNETTE LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:14-cv-00999-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Marquita Annette Little brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  (Doc. 1).[1]  This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for the disposition of the matter.  (Doc. 10).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc. ___" are to the electronic numbers at the top of each pleading that are assigned by the Clerk of the Court.

## I.      Procedural History

Plaintiff filed her application for disability insurance benefits on November 4, 2010. (R. 125-28).[2] She claims to have become disabled on September 25, 2009. (*Id.*) Her application was initially denied. (R. 74-78). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff, her counsel, and a vocational expert ("VE") attended the hearing via teleconference on June 4, 2012. (R. 42). On September 6, 2012, the ALJ issued a decision in which he found Plaintiff was not disabled. (R. 25-37).

The Appeals Council declined to grant review of the ALJ's decision. (R. 1-3). Plaintiff then filed the present action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II.     Standard of Review

In reviewing claims brought under the Social Security Act, this court's role is a narrow one. "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see*

---

[2]References herein to "R. ___" are to the administrative record located at Document 6 (Answer of the Commissioner).

*also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The plaintiff must demonstrate that the decision of the Commissioner is not supported by substantial evidence. *See, e.g., Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). The court gives deference to factual findings and reviews questions of law *de novo*. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1982)) (internal quotations and other citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As noted above, conclusions of law made by the Commissioner are reviewed *de novo*. *Cornelius*, 936 F.2d at 1145. Accordingly, "[n]o ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v.*

*Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)

(citing 20 C.F.R. § 404.1520(a)(4)).  "An affirmative answer to any of the
above questions leads either to the next question, or, on steps three and five,
to a finding of disability.  A negative answer to any question, other than step
three, leads to a determination of 'not disabled.' "  *McDaniel v. Bowen*, 800
F.2d 1026, 1030 (11th Cir. 1986).  "Once a finding is made that a claimant
cannot return to prior work the burden shifts to the Commissioner to show
other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th
Cir. 1995) (citation omitted).  The Commissioner must further show that
such work exists in the national economy in significant numbers.  *Id.*; *Evans*,
551 F. App'x at 524.

## IV.  Findings of the ALJ

Plaintiff was 51 years old at the time of the ALJ's decision.  (R. 44).
She has a high school education.  (R. 45).  She has past relevant work
experience as a bank teller and "school cook worker."  (R. 57).   In her
disability report, Plaintiff alleged she has the following conditions, which
caused her to become disabled and unable to work: high blood pressure,
right ankle tendonitis, shoulder muscle spasms, allergic reaction to pain
medications, depression, and high cholesterol.  (R. 155).

Following a hearing, the ALJ used the five step sequential evaluation

process to evaluate the medical records, testimony, and other evidence. (R. 25-37). At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity ("SGA") since the alleged onset date, because "she earned $4,857.00 in the 4th quarter of 2009." (R. 27).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: allergies and allergic rhinitis; pharyngitis; allergic reaction to medication; sinusitis; muscle spasms with chronic low back pain; neck, hip, shoulder, buttock, and hand pain status post motor vehicle accident; myalgias; hypertension; plantar fasciitis; and posterior tibial tendonitis status post right ankle posterior tibial tendon synovectomy. (R. 27). The ALJ further found that Plaintiff's hypercholesteremia to was a non-severe impairment and that her alleged depression was not a medically determinable impairment. (R. 27, 31).

At step three, the ALJ found that the combination of severe and non-severe impairments did not meet the severity of an impairment contained in the listing of impairments.[3] (R. 31). He further stated that Plaintiff's right ankle tendonitis did not rise to the level of major dysfunction of a joint (Listing 1.02). (*Id.*)

---

[3] The listing is found at 20 C.F.R. Part 404, Subpart P.

The ALJ then determined Plaintiff's residual functional capacity ("RFC").   He found that Plaintiff "[could] lift and carry between 5 and 15 pounds."  (R. 32).  More specifically, he cited the functional capacity evaluation ("FCE") performed at Champion Sports Medicine on August 19, 2010, "which indicated that the claimant could lift 5-7.5 pounds frequently and 10-15 pounds occasionally."  (R. 34).  He also stated, "Dr. [Scott] Morris kept her at light duty, which is akin to light work."  (*Id.*)  The ALJ also noted that "[t]he medical evidence of record does not support the claimant's allegations regarding the severity of her back and neck pain…." (R. 33).  Namely, Plaintiff's testimony at the hearing regarding her inability to turn her head, precluding her from driving, and her inability to bend her waist was found to be contradicted by Dr. Walid Freij's examination in December 2011.  (*Id.*)  Thus, the ALJ determined that Plaintiff had the RFC to perform a reduced range of light work.  (R. 34).

After determining Plaintiff's RFC, the ALJ proceeded to step four. Here, he found that Plaintiff could perform her past relevant work as a bank teller.  (R. 35).  In making this finding, the ALJ relied upon the testimony of the VE.  (*Id*.)  The VE also testified that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  (*Id.*)  These jobs

include ticket seller, cashier, and check writer.  (R. 36).

Based on the foregoing, the ALJ concluded that Plaintiff was not disabled.  (R. 36-37).

## V.    Analysis

Plaintiff claims that the Medical Vocational Rules ("MVR") require a finding that she is disabled.  She also argues that the ALJ erred in finding her capable of performing a reduced range of light work.  Instead, she claims the ALJ should have found that she was capable of performing only sedentary work.  (Doc. 9 at 6-9)  If she is found to be capable of only sedentary work, she posits that the "Grids" require a finding that she is disabled.  (*Id*.)  The court will address her assertions in reverse order.

### A.    Did the ALJ err in finding that Plaintiff could perform a reduced range of light work?

Plaintiff claims "the ALJ's findings [on exertional limitations] do not comport with the exertional requirements for light work pursuant to 20 C.F.R. § 404.1567(b)."  (Doc. 9 at 7).  She argues that a sedentary RFC would have been the more appropriate finding.  (*Id*.)  The Commissioner disagrees, arguing that the record supports the ALJ's finding.  (R. 11 at 4-14).

The ALJ concluded that because Plaintiff could lift and carry between

5-15 pounds and could stand and walk for one hour each at a time and for two hours at a time in total in an eight hour day, with additional postural limitations, she exceeded the limitations for sedentary work, resulting in an RFC of "light work" with "additional limitations."  (R. 32).  It is this finding that Plaintiff challenges (doc. 9 at 7-8), asserting that it is significant because if she were limited to the full range of unskilled sedentary work, she would "grid" under the Medical-Vocational Guidelines ("MVG") (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 2) as disabled.  (Doc. 9 at 6).  This argument raises two issues: first, whether the ALJ correctly found that Plaintiff qualified for "light work" with "additional limitations"; and second, whether MVG 201.14 applies in this instance.

### 1.     Light Work Determination

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F. R. § 404.1567(a).  It also limits standing or walking to no more than about two hours of an eight-hour workday.  SSR 83-10 (available at 1983 WL 31251, at 5).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F. R. § 404.1567(b).  It also provides that

"the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10 (available at 1983 WL 31251, at 6).

The ALJ's RFC findings discussed above are correct and supported by the record.  On August 19, 2010, Plaintiff's treating orthopedic physician, Dr. Morris, referred her to Champion Sports Medicine for a FCE.  The evaluation provides that Plaintiff's exertional limitations are 5-15 pounds.  (R. 301).  It further states her "weight range: 10 to 15 pounds occasional; 5 to 7.5 pounds frequent."  (R. 298).  That evaluation resulted in the ALJ finding that Plaintiff "could lift and carry 7.5 pounds frequently and 15 pounds occasionally, and for shoulder level to overhead, she could lift and carry five pounds frequently and 10 pounds occasionally."  (R. 29).  On December 16, 2011, a consulting neurologist, Dr. Walid Freji, also performed an evaluation of Plaintiff.  The results of that evaluation were also consistent with the findings and limitations imposed by the ALJ, particularly as they relate to the weight, sitting, standing, and walking limitations.  (R. 32, 298, 379-94).

To the extent Plaintiff argues that the treatment notes of Dr. Morris support an RFC for sedentary work (doc. 9 at 7-8), the court disagrees.  Dr.

Morris's notes consistently indicate that Plaintiff could perform "light work."[4]  (R. 317, 320, 323, 346-49).  Ultimately, on September 17, 2010, he released her to full duty at her school cooking job.  (R. 306-12).

In sum, Plaintiff cites no portion of the record supporting that she is incapable of performing work at exertional limits greater than those of sedentary work.  The court finds that there is substantial evidence upon which the ALJ based his finding that Plaintiff could perform a reduced range of light work.

### 2.    The MVRs

Plaintiff next agues that the ALJ erred in failing to apply the grids – particularly § 201.14 – for individuals closely approaching advanced age who could perform only sedentary work with no transferrable skills, which would lead to a finding that she was disabled.  (Doc. 9 at 6-8).

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform.  However, "[e]xclusive reliance on the grids is not appropriate either when

_____

[4] In a June 29, 2010 progress note, Dr. Morris did reference keeping Plaintiff at "light duty" at work.  (R. 288).  To the extent Plaintiff argues that the ALJ "conflated" the August 2010 FCE and Dr. Morris's reference to "light duty," which was not intended to constitute "light work" under the regulations (doc. 9 at 7-8), the court is not impressed. Dr. Morris specifically checked "light work" on various forms that specifically stated that "light work" was defined as "[l]ifting 20 pounds maximum with frequent lifting and/or carrying of objects weighting up to 10 pounds." (*See, e.g.,* R. 317).

> [the] claimant is unable to perform a full range of work at a
> given residual functional level or when a claimant has
> non-exertional impairments that significantly limit basic work
> skills."

*Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (quoting *Francis*

*v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added) (citing

*Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir.1982), *adhered to sub*

*nom. Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983)).  The Grids provide

administrative notice of the number of unskilled jobs at the various

exertional levels in the national economy.  *See* 20 C.F.R., pt. 404, subpart P,

app. 2, § 200.00(b).

> Thus, when all factors coincide with the criteria of a rule, the
> existence of such jobs is established.  However, the existence of
> such jobs for individuals whose remaining functional capacity
> or other factors do not coincide with the criteria of a rule must
> be further considered in terms of what kinds of jobs or types of
> work may be either additionally indicated or precluded.

20 C.F.R. pt. 404, subpart P, app. 2, § 200.00(b).

Plaintiff's claim is without merit for a number of reasons.  First, it

ignores the fact that the ALJ determined that Plaintiff could perform her past

relevant work as a bank teller.  (R. 35).  This decision was supported by the

testimony of the vocational expert, who testified that someone with

Plaintiff's limitations could perform her past work as a bank teller.  (R. 34,

60).  Plaintiff has failed to demonstrate that she cannot perform her past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

Second, there was substantial evidence produced at the administrative hearing that there were other jobs that Plaintiff could perform in significant numbers in the national economy, as is required of the Commissioner at step five.  (R. 35-36, 56-62).  Plaintiff did not demonstrate that she cannot perform the other work identified by the vocational expert.

In evaluating Plaintiff, the ALJ looked at the grids.  (R. 35).  However, because Plaintiff's exertional levels fell between the levels for sedentary and light work, the ALJ correctly determined that the grids could only be used as a framework for his decision-making.  20 C.F.R. § 404.1569.  It was necessary for him to consult a vocational expert.  *See Phillips*, 357 F.3d at 1242.  The expert, Dr. Beadles, testified that given Plaintiff's age, education, work experience, and RFC, she could "perform the requirements of representative occupations" such as check writer, ticket seller, and cashier/sales clerk.  (R. 36, 57-62).  Thus, the ALJ was justified in relying on this testimony to find that Plaintiff "is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy." (R. 36).

To the extent that Plaintiff specifically asserts that the ALJ should have limited her to sedentary work and should have applied MVG 201.14 to find her disabled, the court is not impressed.  As noted already, the ALJ found, and the record demonstrates, that while Plaintiff could not perform the full range of light work, she could perform activities in excess of those associated with sedentary work.  (*See* R. 32).  Specifically, the ALJ found that Plaintiff could lift and carry five to fifteen pounds, which is greater than the minimal lifting and carrying requirements of sedentary work.  (*Id*.)  Additionally, the ALJ found Plaintiff could stand and walk for up to four hours in an eight-hour workday, which exceeds the occasional standing and walking limitations in sedentary work.  (*Id*.)  Accordingly, the ALJ properly decided not to apply the Grid rules and instead decided to rely on the testimony of a vocational expert to determine Plaintiff's ability to perform other work.  This was a correct decision.  *See, e.g., Phillips*, 357 F.3d at 1242-44.

Further, to the extent Plaintiff argues that she should be reclassified under Grid rule 201.14, her claim is without merit because she has

transferrable skills. Grid 201.14 applies to individuals who can perform only sedentary work or less, are closely approaching advanced age, have a high school education or more that does not provide for direct entry into skilled work, and past relevant work that is skilled or semi-skilled but those skills do not transfer to other work. *See* 20 C.F.R., pt. 404, subpart P, app. 2, § 201.14. Dr. Beadles testified that Plaintiff's past work as a bank teller was light and skilled and that her skills were transferrable to other work. (R. 57, 61). Thus, Rule 201.14 is not applicable. *See Lapica v. Comm'r Soc. Sec.*, 501 F. App'x 895, 898 (11th Cir. 2012) ("Rule 201.14 cannot apply, however, because, by definition, it only applies when an individual lacks transferable skills."). Accordingly, the court finds that the Commissioner has met her burden and that the ALJ's decision is due to be affirmed as concerns this challenge. *Evans*, 551 F. App'x at 524-25.

### B.   Plaintiff's Other Impairments

Plaintiff also claims that the ALJ failed to fully consider the combined effects of her other severe impairments, including allergic rhinitis, pharyngitis, and sinusitis. (Doc. 9 at 8). She further claims that there should have been a finding of an environmental restriction based on those impairments. (*Id*.) However, she points to nothing in the record to

15

substantiate the alleged effects from these impairments.  As noted by the

Eleventh Circuit Court of Appeals, "the mere existence of ... impairments

does not reveal the extent to which they limit [a claimant's] ability to work

or undermine the ALJ's determination in that regard."  *Moore v. Barnhart*,

405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Additionally, there is no

argument, much less evidence, that any alleged environmental restriction

would preclude employment in the jobs that Dr. Beadles testified Plaintiff

could perform.  In short, these arguments are unsupported and without merit.

Plaintiff also claims that the ALJ erred in finding that depression was

not a medically determinable impairment that "might reasonably have

affected [her] concentration and stamina in the context of the RFC."  (Doc. 9

at 8-9).  Specifically, the ALJ found:

> As the claimant has not sought any treatment from a mental
> health professional, and she did not report any depression
> problems in her function report or hearing testimony, the
> undersigned finds that the single reference to depression in her
> medical treatment notes from February 2012 does not provide
> sufficient documentation of a medically determinable mental
> impairment.

(R. 31).

There was limited evidence in the record regarding Plaintiff's

depression.  There is a terse reference to depression and a need to add an

16

anti-depressant medication in her medical records from February 10, 2012.

(R. 396). However, Plaintiff denied being depressed or being treated for

depression in her telephone interview with a Disability Determination

Service representative on January 11, 2011.[5] (R. 186). Because there was

direct evidence from Plaintiff denying the existence of depression, coupled

with a nearly complete lack of evidence suggesting the existence of

depression, including no mention of depression at the hearing, the ALJ's

finding that depression was not a medically determinable impairment is

manifestly correct. Substantial evidence supports this finding.

Finally, Plaintiff argues in conclusory fashion that the combined

effects of her back, neck, hip, shoulder, and buttocks pain "might reasonably

have affected [her] concentration and stamina in the context of the RFC."

(Doc. 9 at 8-9 (citing 20 C.F.R. § 404.1545(c)[6])). However, the ALJ

---

[5] Depression was also listed on an undated Adult Disability Report. (R. 155).

[6] Section 1545(c) provides:

> **Mental abilities**. When we assess your mental abilities, we first
> assess the nature and extent of your mental limitations and restrictions and
> then determine your residual functional capacity for work activity on a
> regular and continuing basis. A limited ability to carry out certain mental
> activities, such as limitations in understanding, remembering, and carrying
> out instructions, and in responding appropriately to supervision,
> co-workers, and work pressures in a work setting, may reduce your ability
> to do past work and other work.

20 C.F.R. § 404.1545(c).

considered these impairments and found Plaintiff's claims not to be credible. This court agrees.

Dr. Freij's December 2011 evaluation found that Plaintiff could fully rotate, flex, and extend her cervical spine, and that there was no limitation in the flexion or extension of her thoracic or lumbar spine. (R. 381). Those findings were markedly inconsistent with Plaintiff's contention that she cannot turn her neck to drive or bend her waist. Plaintiff's August 2010 FCE also was inconsistent with her conclusory claims. Additionally, the ALJ noted:

> Ms. Little testified that she takes Lyrica daily, but her pharmacy records show that the only time she filled a prescription for this medication was on April 1, 2010. (Ex. 7F, Page 6). Her medical treatment records show that she was prescribed Lyrica on April 3, 2012, but her pharmacy records … show that she never filled that prescription. Those records show that the only medications she has regularly taken to treat her musculoskeletal problems are Meloxicam, Flexeril, and Tramadol. This conservative medication regime is clearly inconsistent with the claimant's allegations of pain in the 8-9/10 range.

(R. 34). In view of the evidence in the record and the findings of the ALJ, the court determines that Plaintiff's claim is without merit.

## V.    Conclusion

Premised on the foregoing, the court finds that the determination of the Commissioner is due to be affirmed. An appropriate order will be

entered.

      **DONE**, this the 31st day of July, 2015.

                    _____

                    **JOHN E. OTT**
                    Chief United States Magistrate Judge